E-FILED
Friday, 05 April, 2019  12:50:39 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PETER AYLING, JR., ALI KRAMER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.:  19-cv-3091 |
| v. | ) | |
| | ) | |
| MEMORIAL HEALTH SYSTEM, d/b/a | ) | |
| MEMORIAL MEDICAL CENTER | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Peter Ayling, Jr. and Ali Kramer, by their attorneys, Jennifer Sender and Andrés J. Gallegos of Robbins Salomon & Patt, Ltd., for their Complaint against Defendant Memorial Health System, d/b/a Memorial Medical Center ("Memorial," or the "Defendant"), an Illinois not-for-profit corporation, state as follows:

## JURISDICTION AND VENUE

1.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the Plaintiffs' claims alleged herein arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189; Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## **THE PARTIES**

3.      Plaintiff, Peter Ayling, Jr. ("Peter"), is an adult and is profoundly deaf. Peter's primary means of communication is through American Sign Language ("ASL"). Peter has a limited ability to understand written English language, he is comfortable writing only simple sentences in English, he cannot lip read, and he cannot articulate speech. He is a person with a disability within the meaning of all applicable statutes. Peter resides with his fiancée, Ali Kramer, in Concord, Illinois.

4.      Plaintiff, Ali Kramer ("Ali"), is an adult and is profoundly deaf. Ali's primary means of communication is through American Sign Language ("ASL"). Ali has a limited ability to understand written English language, she is comfortable writing only simple sentences in English, she cannot lip read, and she cannot articulate speech. She is a person with a disability within the meaning of all applicable statutes. Ali resides with her fiancé, Peter Ayling, Jr., in Concord, Illinois.

5.      Memorial Medical Center is an Illinois not-for-profit corporation and is a regional acute care medical center located in Springfield, Illinois, which serves the residents of 40 central and southern Illinois area. Memorial Medical Center is one of seven affiliates of the Memorial Health System.

## **FACTUAL BACKGROUND**

6.      The deaf community struggles with significant health disparities and is often excluded from health surveillances, outreach programs and mass media healthcare messages. Deaf users of ASL, through cultural and language barriers, are at high risk for poor health knowledge and inequitable access to medical care in our health system. These barriers directly translate to inadequate assessment, limited access to treatment, insufficient follow-up and poorer

outcomes. For example, as compared with the hearing population, for the deaf population there are lower rates of individuals accessing preventative services, worse cardiovascular health outcomes and higher rates of diabetes and obesity.[1] ASL is the primary language for many people who are deaf; however, interpreters are often not provided during medical visits.

7.     Memorial's denial to plaintiffs of full and equal access to its healthcare services manifests itself in several fundamental ways: (1) failure to provide appropriate auxiliary aids and services, like qualified ASL interpreters and devices, or other means to effectively communicate with patients and spouses of patients who are deaf; (2) required family members to interpret for patients who are deaf; (3) inadequate policies and procedures to accommodate the plaintiffs' disability; and (4) failure to properly train appropriate staff on the use of video remote interpreting ("VRI") equipment. These violations deprived the plaintiffs of the full and equal access to defendant's services and denied plaintiffs the equal opportunity to participate in Peter's healthcare, in violation of the ADA, the Rehabilitation Act and Section 1557.

8.     Memorial failed to implement policies, practices and procedures that meet its enhanced federal communication access mandate, which if followed would provide plaintiffs an equal opportunity to participate in its services and in healthcare services provided to Peter, as required by Section 1557. 45 C.F.R. § 92.202.

9.     Memorial is a public accommodation within the meaning of the ADA, and a covered entity within the meaning of Section 1557.

10.     Memorial participates in one or more Medicare and Medicaid healthcare plans with third-party payers and is a participating provider under Medicare and Medicaid. Approximately 70% of Memorial's inpatients are Medicaid and Medicare recipients; and

---

[1] *See* Schoenborn, M.P.H., et al., Health Disparities Among Adults with Hearing Loss: United States, 2000 – 2006, Center for Disease Control and Prevention, Health E-Stats. Available at:
http://www.cdc.gov/nchs/data/hestat/hearing00-06/hearing00-06.htm

approximately 50% of its outpatients are Medicaid and Medicare recipients. As a result, thereof, Memorial is a recipient of federal financial assistance within the meaning of the Rehabilitation Act and a covered entity under Section 1557.[2]

11.     Memorial failed to provide Peter and Ali with auxiliary aids and services to allow them to effectively communicate with Memorial's medical and nursing staff during numerous vital encounters in connection with Peter's testing in June and July of 2018 and subsequent surgery in August 2018, which did not allow them to participate in Peter's care. Further, Memorial improperly relied on Peter's 11-year-old son; John Demien, Ali's father; and Amanda Demien, Ali's mother, to facilitate communication between physicians and nurses and Peter and Ali during numerous vital encounters in connection with medical services that Peter received at Memorial. By failing to provide auxiliary aids and services, Memorial jeopardized Peter's health and well-being.

12.     On June 11, 2018, accompanied by Ali, Peter underwent a scheduled exercise stress test at Memorial. Despite Peter's request for an on-site ASL interpreter for the test, Memorial provided video remote interpreting ("VRI"), which is very difficult to use while exercising. During the course of the testing, the VRI picture kept freezing. When the VRI picture screen was not frozen, the transmission pixilated. Moreover, no assistance was given to Ali to help communicate. Because of the problems with the VRI, Peter was not provided effective communication during that test.   At no point was Peter ever provided the results of that test.

13.     On July 17, 2018, accompanied by Ali and by Peter's 11-year-old son, at approximately 7:30 AM, Peter underwent a CT coronary angiogram at Memorial. Peter's son is

---

[2] Illinois Hospital Report Card and Consumer Guide to Healthcare, Illinois Department of Public Health. Available at: http://www.healthcarereportcard.illinois.gov/hospitals/view/101160 (52.5% of all inpatients at Memorial Medical Center are Medicare recipients, and 17.7% of its inpatients are Medicaid recipients; 28.91% of all of its outpatients are Medicare recipients, and 21.08% of its outpatients are Medicaid recipients).

hearing and knows some sign language but is not fluent and he has zero familiarity with medical terminology. Prior to the scheduled appointment, Peter made a request to Memorial for an on-site interpreter for the appointment. Upon arrival, Peter and Ali, in writing, asked where the interpreter was, and they were informed an interpreter was coming. As they were waiting for the interpreter's arrival, Peter and Ali attempted to communicate with the staff through handwritten notes, but those notes were abbreviated and cryptic. At that point, the physician inquired whether Peter's eleven-year-old son could interpret. Ali mouthed and gestured "No," however, the physician proceeded to speak directly to Peter's son and showed him documents to then interpret for his father.  The medical records entry for that test state that Peter was not able to follow breathing instructions as he's hearing impaired. Peter was never informed what that test was, what it would entail and was never given the results of that test.

14.      On the same date, Peter underwent a scheduled renal artery duplex at Memorial's vascular lab. Again, Memorial relied upon Peter's son to interpret.  Peter's medical records for that test reflect that the study was difficult to obtain because Peter had difficulty coordinating the breathing program for the testing because he was deaf. Peter was never informed what that test was, what it would entail, and was never provided with the results of that test. As Peter, Ali and Peter's son were leaving the hospital, and interpreter showed up and while apologizing, informed them that she was scheduled to arrive at noon, after the scheduled test.

15.      On August 1, 2018, Peter required a cardiac catheterization at Memorial. Ali, and her father, attended with Peter. Ali's father is hearing and knows sign language but is not fluent and has no familiarity with medical terminology. Memorial instructed Peter to arrive that morning at 7:00 A.M., which he did. Upon arrival, Ali's father asked whether the interpreter was available and despite Peter and Ali having requested in advance of this appointment that a sign

language interpreter be provided, there was no on-site ASL interpreter present. Memorial's staff used notes to communicate, but Peter and Ali were not able to understand all that was written. Peter and Ali complained about the lack of an ASL interpreter, and given no other option, Ali requested her father assist in interpreting, which he attempted, to the best of his limited ability, for the registration process. Once inside the examination room, Peter's physician commenced to immediately speak with Ali's father about the procedure and had him interpret to both Peter and Ali. Ali's father informed the physician that he was not a licensed interpreter, that he has fair sign language skills and informed him that he was Peter's father-in-law. Nevertheless, the physician continued to speak directly to Ali's father for him to continue to interpret. Peter's physician seemingly lost patience with the interpretation as in Peter's medical records for this encounter, under "review of systems" those records state that they were taken from his past medical records "… rather than going through an interpreter to run through all the review of systems." An ASL interpreter arrived at 9 A.M. and stated he would have been there earlier for registration but Memorial scheduled him to start at 9 A.M. Memorial staff did not ask the interpreter to accompany Peter into the procedure room. Instead when Ali questioned why the interpreter was not going with Peter into the procedure room, the interpreter then requested to join Peter and was given scrubs to put on. The interpreting achieved effective communication for the remainder of the appointment; however, Peter and Ali were not able to review the information from the first half of the appointment with the interpreter. From the results of the cardiac catherization, it was determined that Peter would require a quadruple bypass. Before leaving the appointment, Ali requested assurance from Memorial's staff that an on-site interpreter would be available for both of them for Peter's surgery on August 6, 2018.

16.     On August 2 and 3, 2018, Ali called Memorial to request that an on-site interpreter be available for Peter's surgery and hospitalization. On August 3, Memorial's staff assured Ali that an on-site interpreter would be provided.

17.     On August 6, 2018, at approximately 7:00 A.M., Peter, Ali and Ali's mother, Amanda, arrived at Memorial for Peter's quadruple bypass surgery. At the registration desk Amanda asked the staff if an interpreter will be provided and was informed that a request was made but no one had responded. The staff then informed Amanda that Peter and Ali would have to use VRI. Amanda explained that VRI would not be effective for communication for Peter, because Peter would be in a prone position, unable to use his arms because of IVs, unable to see the VRI screen, and under the effects of sedation. Memorial still did nothing to provide an on-site interpreter.

18.     Lacking any interpreter, Amanda attempted to interpret for Peter to the best of her limited ability. Memorial even provided Amanda with scrubs to go into the operating room with Peter. Amanda insisted to speak with Memorial's risk manager, but her requests were ignored. Peter had numerous questions before going into surgery, but those questions went unanswered due to Amanda's limited ability to sign.

19.     During the time that Amanda was attempting to interpret for Peter prior to anesthesia, there was no one available to interpret for Ali. Ali was under a great deal of stress and was desperate for information about the surgery and Peter's well-being.  The surgery lasted approximately five hours and no interpreter was provided for Ali. No interpreter was provided following the surgery for Ali's conversations with the surgeons as to how the surgery went and how Peter was doing. Again, Amanda was forced to interpret for Ali.

20.     Memorial finally provided an on-site interpreter later that night, hours after the surgery, after Peter was transferred to the intensive care unit. The interpreter arrived approximately at 7 P.M. and was only able to stay a short time, leaving at approximately 9 P.M. After the interpreter left Amanda had to go into the intensive care unit to assist explaining to Peter that the tubes will be removed from his throat, how to move from his bed to a chair and other instructions the nurses were conveying. Amanda then stayed overnight at the hospital with Ali to attempt to interpret for her and Peter, which she had to interpret for him several times with doctors and nurses throughout the night. On August 7, the day after Peter's surgery two interpreters were provided throughout the day. On the second day after surgery, August 8, Memorial did not provide an interpreter until approximately 11:00 A.M. Amanda arrived that morning and was required to interpret for Peter and Ali until the interpreter arrived.

21.     From August 8 at approximately 11:00 A.M. through the time of Peter's discharge on August 10, 2018, Memorial did provide on-site interpreters for Peter and Ali. On those days, however, the interpreters left at 5:00 P.M. After 5:00 P.M., Peter and Ali were forced to attempt to communicate with doctors, nurses, and staff through handwritten notes, which Peter and Ali had difficulty understanding. Ali stayed with Peter during his entire hospitalization.

## COUNT I

### Peter Ayling, Jr. - Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131

1-21.   Plaintiff incorporates by reference paragraphs 1 to 21.

22.     Peter's claims in Count I arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189 (the "ADA"), and its implementing regulations under Title III, applicable to public accommodations, 28 C.F.R. §§ 36.101 – 36.608, which provide in pertinent part as follows:

8

A.   No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

B.   It shall be discriminatory to subject an individual on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b) (1)(A)(i); 28 C.F.R. § 36.202(a).

C.   It shall be discriminatory to afford an individual, on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

D.   It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b) (2)(A)(ii); 28 C.F.R. § 36.302(a).

E.   The term "public accommodation," as used in the statute, includes hospitals. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.104.

F.   It shall be discriminatory to require an individual with a disability to bring another individual to interpret for him or her; a public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult to provide such assistance is appropriate under the circumstances; and a public accommodation shall not rely on a minor child to interpret or facilitate communication, except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available. 28 C.F.R. § 36.303(c)(2)-(4).

23.     Pursuant to the statutory directive in 42 U.S.C. § 12186(b), the U.S. Department of Justice has promulgated regulations to implement Title III's broad nondiscrimination mandate with respect to covered entities. One of these regulations, titled "Auxiliary aids and services," specifies that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Although "the ultimate decision as to what measures to take rests with the public accommodation," the public accommodation "should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication." *Id.* § 36.303(c)(1)(ii). The chosen method must "result[] in effective communication." *Id.* Moreover, to "be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.*

24.     The acts and omissions of defendant Memorial violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners, as Memorial has discriminated against Peter by:

A.      Denying him the opportunity for the full and equal enjoyment of Memorial's goods, services, facilities, privileges, advantages, or accommodations.

B.      Denying him the opportunity to participate in or benefit from Memorial's goods, services, facilities, privileges, advantages, or accommodations.

C.      Offering or affording him services that are not equal to those services afforded to other individuals who are not deaf.

D.      Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford Memorial's goods, services and facilities to Peter where such modifications would not fundamentally alter the nature of its goods, services or facilities.

E.      Intentionally failing to provide plaintiff appropriate auxiliary aids and services to achieve effective communications and to participate in his own healthcare.

10

F.      Requiring Peter's minor child and Ali's parents to interpret in the absence of an emergency involving an imminent threat to the safety or welfare of Peter or the public and doing so despite the objections of Peter.

Otherwise having discriminated against the plaintiff because of his disability.

25.     As a proximate result of Defendant's violations of the ADA, Memorial has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

26.     Memorial's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, defendant Memorial will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on Peter, for which he has no adequate remedy at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188), Peter is entitled to injunctive relief.

27.     Plaintiff is entitled to reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12205.

WHEREFORE, plaintiff Peter Ayling, Jr. prays for the following relief against defendant Memorial Medical Center:

A.      A preliminary injunction and a permanent injunction, prohibiting defendant Memorial from violating the ADA, 42 U.S.C. § 12181, et seq., and compelling defendant to comply with the ADA;

B.      An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

C.      An award of attorneys' fees and costs; and

D.      Such other relief as the Court deems just.

## COUNT II

### Peter Ayling, Jr. - Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 704

1-21.    Plaintiff incorporates by reference the paragraphs 1-21.

22.    At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and is therefore subject to the anti-discrimination provisions of the Rehabilitation Act, as herein described.

23.    At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a). The Section 504 implementing regulation provides that "[n]o qualified handicapped person shall, on the basis of handicap be excluded from participation in, be denied the benefits of or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance." 45 C.F.R. § 84.4(a).

   A.  The regulation further provides:

   "A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."

   45 C.F.R. § 84.4(b)(1) (ii).

   B.  Elsewhere, the Section 504 regulation states:

   "In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: … (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.

   45  C.F.R. § 84.52(a)(2).

C.   In addition, "[a] recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." 45 C.F.R.  § 84.52(c).

D.   The regulation further provides:

"A recipient to which the subject applies that employs 15 or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

45 C.F.R. § 84.52(d)(l).

E.   The regulation provides that such "auxiliary aids may include interpreters… and other aids for persons with impaired hearing… 45 C.F.R. § 84.52(d)(3).

F.   The Section 504 regulation defines a person who has a disability as any person who:

"(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

45 C.F.R. § 84.3(j)(l)(i)-(iii).

G.   A qualified person with a disability, with respect to the provision of health, welfare and social services, is a person "who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k)(4).

24.   Through the acts and omissions alleged herein, Memorial has, solely on the basis of Plaintiff's disability, excluded Plaintiff from participating in its services, denied Plaintiff the benefit of its services, denied Plaintiff the opportunity to participate in his healthcare, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794. *et seq*., and the regulations promulgated thereunder, and have resulted in injury to Plaintiff.

25.   At all relevant times herein, Memorial knew that Plaintiff had federally protected

rights to effective communication, and Defendant's acts and omissions alleged herein violated and continued to violate the Rehabilitation Act and its implementing regulations by one or more or all of the following manners as defendant has discriminated against Peter by:

A.   Denying him the opportunity for the full and equal enjoyment of the services, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendant.

B.   Denying him the opportunity to participate in or benefit from the services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

C.   Offering or affording him services that are not equal to those services afforded to other individuals without hearing impairments.

D.   Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its services to Plaintiff where such modifications would not fundamentally alter the nature of its services.

E.   Failing to establish a procedure for effective communication with Plaintiff for the purpose of providing health care.

F.   Acting intentionally and with deliberate indifference in failing to provide Plaintiff appropriate auxiliary aids and services, such as an on-site sign language interpreter or effective video remote interpreting services, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in undue burden.

G.   Defendant has otherwise discriminated against the Plaintiff.

26.   Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

27.     As a proximate result of Defendant's violations of Section 504, Memorial has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

28.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794(a), as Defendant's conduct has inflicted injury and damages upon Plaintiff, including loss of a civil right, mental anguish, and mental pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Peter Ayling, Jr. prays for the following relief:

A.     An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.     A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.     An award of compensatory monetary damages;

D.     An award of attorneys' fees and costs; and

E.     Such other relief as the Court deems just.

## COUNT III

## Peter Ayling, Jr. - Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116

1-21.   Plaintiff incorporates by reference paragraphs 1-21.

22.     Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,*

Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

23.     As Defendant participates in Medicare and Medicaid, it is a covered entity subject to compliance with Section 1557.

24.     The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

A.     Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

(1)     that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

(2)     that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

(3)     how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

(4)     the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

(5)     the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

16

      (6)     how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

    B.     That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added). Those regulations also proscribe a covered entity from requiring an individual with a disability to bring another individual to interpret for him or her, 28 C.F.R. §35.160(c)(1); from relying on an adult accompanying an individual with a disability to interpret or facilitate communication except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult to provide such assistance is

appropriate under the circumstances, 28 C.F.R. § 35.160 (2)(i)&(ii); and from relying on a minor child to interpret or facilitate communication, except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available. 28 C.F.R. § 35.160(c)(3).

25.    Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide them with an ASL interpreter, either on-site or via effective VRI.

26.    Defendant had a duty under Section 1557 to not rely upon Plaintiff's accompanying adults or his minor child to interpret for him in the absence of an imminent threat to the safety or welfare of Plaintiff or the public and without his consent.

27.    Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff were as effective as communications with others in its healthcare services, and Defendant failed to meet its obligations under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28.    Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

29.    Defendant's conduct constituted violations of Section 1557.

30.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

31.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Peter Ayling, Jr. prays for the following relief:

A.     An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.     A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.     An award of compensatory monetary damages;

D.     An award of attorneys' fees and costs; and

E.     Such other relief as the Court deems just.

## COUNT IV

## Ali Kramer - Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131

1-21.   Plaintiff incorporates by reference paragraphs 1 to 21.

22.     Ali's claims in Count I arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189 (the "ADA"), and its implementing regulations under Title III, applicable

to public accommodations, 28 C.F.R. §§ 36.101 – 36.608, which provide in pertinent part as

follows:

A.   No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

B.   It shall be discriminatory to subject an individual on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b) (1)(A)(i); 28 C.F.R. § 36.202(a).

C.   It shall be discriminatory to afford an individual, on the basis of a disability or disabilities of such individual, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

D.   It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b) (2)(A)(ii); 28 C.F.R. § 36.302(a).

E.   The term "public accommodation," as used in the statute, includes hospitals. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.104.

F.   It shall be discriminatory to require an individual with a disability to bring another individual to interpret for him or her; a public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult to provide such assistance is appropriate under the circumstances; and a public accommodation shall not rely on a minor child to interpret or facilitate communication, except in an emergency

involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available. 28 C.F.R. § 36.303(c)(2)-(4).

23.     Pursuant to the statutory directive in 42 U.S.C. § 12186(b), the U.S. Department of Justice has promulgated regulations to implement Title III's broad nondiscrimination mandate with respect to covered entities. One of these regulations, titled "Auxiliary aids and services," specifies that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Although "the ultimate decision as to what measures to take rests with the public accommodation," the public accommodation "should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication." *Id.* § 36.303(c)(1)(ii). The chosen method must "result[] in effective communication." *Id.* Moreover, to "be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.*

24.     The acts and omissions of defendant Memorial violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners, as Memorial has discriminated against Ali by:

A.     Denying her the opportunity for the full and equal enjoyment of Memorial's goods, services, facilities, privileges, advantages, or accommodations.

B.     Denying her the opportunity to participate in or benefit from Memorial's goods, services, facilities, privileges, advantages, or accommodations.

C.     Offering or affording her services that are not equal to those services afforded to other individuals who are not deaf.

D.     Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford Memorial's goods, services and facilities to Ali where such modifications would not fundamentally alter the nature of its goods, services or facilities.

21

E.   Intentionally failing to provide plaintiff appropriate auxiliary aids and services to achieve effective communications and to participate in Peter's healthcare.

F.   Requiring Peter's minor child and Ali's parents to interpret in the absence of an emergency involving an imminent threat to the safety or welfare of Peter or the public and doing so despite the objections of Ali.

G.   Otherwise having discriminated against the plaintiff because of her disability.

25.   As a proximate result of Defendant's violations of the ADA, Memorial has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

26.   Memorial's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, defendant Memorial will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on Peter, for which he has no adequate remedy at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188), Ali is entitled to injunctive relief.

27.   Plaintiff is entitled to reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12205.

WHEREFORE, plaintiff Ali Kramer prays for the following relief against defendant Memorial Medical Center:

A.   A preliminary injunction and a permanent injunction, prohibiting defendant Memorial from violating the ADA, 42 U.S.C. § 12181, et seq., and compelling defendant to comply with the ADA;

B.   An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

C.   An award of attorneys' fees and costs; and

22

D.      Such other relief as the Court deems just.

## COUNT V

### Ali Kramer - Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 704

1-21.   Plaintiff incorporates by reference the paragraphs 1-21.

22.     At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and is therefore subject to the anti-discrimination provisions of the Rehabilitation Act, as herein described.

23.     At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a). The Section 504 implementing regulation provides that "[n]o qualified handicapped person shall, on the basis of handicap be excluded from participation in, be denied the benefits of or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance." 45 C.F.R. § 84.4(a).

A. The regulation further provides:

"A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."

45 C.F.R. § 84.4(b)(1) (ii).

B. Elsewhere, the Section 504 regulation states:

"In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: … (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.

46 C.F.R. § 84.52(a)(2).

C.  In addition, "[a] recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." 45 C.F.R.  § 84.52(c).

D.  The regulation further provides:

"A recipient to which the subject applies that employs 15 or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

45 C.F.R. § 84.52(d)(l).

E.  The regulation provides that such "auxiliary aids may include interpreters… and other aids for persons with impaired hearing… 45 C.F.R. § 84.52(d)(3).

F.  The Section 504 regulation defines a person who has a disability as any person who:

"(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

45 C.F.R. § 84.3(j)(l)(i)-(iii).

G.  A qualified person with a disability, with respect to the provision of health, welfare and social services, is a person "who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k)(4).

24.    Through the acts and omissions alleged herein, Memorial has, solely on the basis of Plaintiff's disability, excluded Plaintiff from participating in its services, denied Plaintiff the benefit of its services, denied Plaintiff the opportunity to participate in Peter's healthcare, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794. *et seq*., and the regulations promulgated thereunder, and have resulted in injury to Plaintiff.

25.    At all relevant times herein, Memorial knew that Plaintiff had federally protected

rights to effective communication, and Defendant's acts and omissions alleged herein violated and continued to violate the Rehabilitation Act and its implementing regulations by one or more or all of the following manners as defendant has discriminated against Peter by:

 A. Denying him the opportunity for the full and equal enjoyment of the services, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendant.

 B. Denying him the opportunity to participate in or benefit from the services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

 C. Offering or affording him services that are not equal to those services afforded to other individuals without hearing impairments.

 D. Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its services to Plaintiff where such modifications would not fundamentally alter the nature of its services.

 E. Failing to establish a procedure for effective communication with Plaintiff for the purpose of providing health care.

 F. Acting intentionally and with deliberate indifference in failing to provide Plaintiff appropriate auxiliary aids and services, such as an on-site sign language interpreter or effective video remote interpreting services, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in undue burden.

 G. Defendant has otherwise discriminated against the Plaintiff.

26. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

27. As a proximate result of Defendant's violations of Section 504, Memorial has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

28.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794(a), as Defendant's conduct has inflicted injury and damages upon Plaintiff, including loss of a civil right, mental anguish, and mental pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ali Kramer prays for the following relief:

A.      An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.      A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.      An award of compensatory monetary damages;

D.      An award of attorneys' fees and costs; and

E.      Such other relief as the Court deems just.

## COUNT VI

## Ali Kramer - Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116

1-21.   Plaintiff incorporates by reference paragraphs 1-21.

22.     Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective

as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

23.     As Defendant participates in Medicare and Medicaid, it is a covered entity subject to compliance with Section 1557.

24.     The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

A.     Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

(1)     that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

(2)     that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

(3)     how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

(4)     the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

(5)     the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

(6)     how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

B.     That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others

in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added). Those regulations also proscribe a covered entity from requiring an individual with a disability to bring another individual to interpret for him or her, 28 C.F.R. §35.160(c)(1); from relying on an adult accompanying an individual with a disability to interpret or facilitate communication except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult to provide such assistance is appropriate under the circumstances, 28 C.F.R. § 35.160 (2)(i)&(ii); and from relying on a minor child to interpret or facilitate communication, except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter

available. 28 C.F.R. § 35.160(c)(3).25.   Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide them with an ASL interpreter, either on-site or via effective VRI.

26.     Defendant had a duty under Section 1557 to not rely upon Plaintiff's accompanying adults or Peter's minor child to interpret for her in the absence of an imminent threat to the safety or welfare of Plaintiff or the public and without her consent.

27.     Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff were as effective as communications with others in its healthcare services, and Defendant failed to meet its obligations under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28.     Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

29.     Defendant's conduct constituted violations of Section 1557.

30.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

31.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ali Kramer prays for the following relief:

A.     An order enjoining Defendant from discriminating against the Plaintiff, requiring Defendant to (i) adopt and implement a legally compliant communication access policy; (ii) make available to Plaintiff an array of auxiliary aids and services; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services and interacting with persons who are deaf;

B.     A declaration that Defendant is operating in a manner which discriminates against the Plaintiff and that Defendant fails to provide communication access to the Plaintiff as required by law;

C.     An award of compensatory monetary damages;

D.     An award of attorneys' fees and costs; and

E.     Such other relief as the Court deems just.

**Both Plaintiffs Request Trial by Jury.**


Dated:  April 5, 2019                      Peter Ayling, Jr. and Ali Kramer, Plaintiffs


                                            /s/ Jennifer M. Sender
                                   _____
                                            One of Their Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com
3075425 (14235.1)