IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PETER AYLING, JR. and<br>ALI KRAMER, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | No. 19-cv-3091 |
| MEMORIAL HEALTH<br>SYSTEM, d/b/a MEMORIAL<br>MEDICAL CENTER, | )<br>)<br>)<br>) | |
| Defendant. | ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Memorial Health System (System) d/b/a Memorial Medical Center's (Memorial) Motion to Dismiss Plaintiffs Complaint or in the Alternative to Strike References to Memorial Health System (d/e 8) (Motion). The parties have consented to proceed before this Court. Consent to the Exercise of Jurisdiction by a United States Magistrate Judge and Reference Order entered May 14, 2019 (d/e 12). For the reasons set forth below, the Motion is ALLOWED in part and DENIED in part with leave to replead. The claims for injunctive relief are dismissed with leave to replead. The Court also ALLOWS the request to remove references to the System from the amended pleadings

and remove the System as a party. Memorial will remain as a named Defendant in this case.

## STATEMENT OF FACTS

For purposes of this Motion, the Court assumes all well-pleaded facts are true. E.g., Anicich v. Home Depot U.S.A., Inc., 852 F.3d 643, 646 (7th Cir. 2017). The Plaintiffs allege the following:

Plaintiffs Peter Ayling, Jr. and Ali Kramer are deaf. Ayling and Kramer are engaged and live together in Concord, Illinois. Both communicate through American Sign Language (ASL). Neither read lips. Each has only a limited ability to understand written English and each is comfortable writing only simple sentences in English. Memorial is a regional acute care hospital located in Springfield, Illinois. Memorial is one of seven affiliates of the System. Complaint (d/e 1), ¶¶ 3-5.

On June 11, 2018, Ayling went to Memorial for a scheduled stress test. Ayling requested an on-site ASL interpreter to be present, but Memorial did not provide one. Memorial provided Video Remote Interpreting (VRI). VRI is difficult to use while performing the exercising required for a stress test. Memorial's VRI malfunctioned during the test. The VRI picture repeatedly froze. When not frozen, the VRI picture was pixilated and hard to see. Ayling was not provided effective communication

during the test and has not been provided with the results of the test. Complaint, ¶ 12.

On July 17, 2018, Ayling went to Memorial for a CT coronary angiogram. Kramer and Ayling's 11-year-old son accompanied him to Memorial.[1] Prior to the scheduled angiogram, Ayling asked for an on-site ASL interpreter for the test. When Plaintiffs and Ayling's son arrived for the angiogram, no ASL interpreter was present. Memorial staff told the Plaintiffs that the ASL interpreter was coming. The Plaintiffs attempted to communicate with Memorial staff with handwritten notes, but the method was not effective. The physician conducting the angiogram asked whether Ayling's son could interpret.[2] The Complaint does not allege whether the physician was an employee of Memorial. Kramer mouthed and gestured "no." Ayling's son is hearing and he knows some ASL but is not fluent and does not know medical terminology. The physician, however, talked directly to the boy and showed him documents to interpret for Ayling. Ayling's medical records of the angiogram stated that Ayling could not follow breathing instructions because he was hearing impaired. Ayling was

---

[1] The Complaint does not allege the name of Ayling's son.
[2] The Complaint does not allege the name of the physician. or whether the physician was an employee of Memorial.

never told what the test was or what the test entailed.  Ayling was also not given the results of the angiogram.  Complaint, ¶ 13.

On the same day, July 17, 2018, Ayling had a scheduled renal artery duplex test in Memorial's vascular lab.  Memorial relied upon Ayling's son to interpret.  Ayling's medical records stated that the study was difficult to obtain because Ayling had difficulty coordinating his breathing for testing because he was deaf.  Ayling was never informed what the test was and was never provided with the results.  The ASL interpreter arrived as the Plaintiffs and Ayling's son were leaving. The ASL interpreter told the Plaintiffs that she was scheduled to arrive at noon, after the tests were over.  Complaint, ¶ 14.

On August 1, 2018, Ayling had a cardiac catheterization at Memorial.  Ayling and Kramer asked in advance for an on-site ASL interpreter to be present.  Ayling arrived at 7:00 a.m., as instructed.  Kramer and Kramer's father accompanied Ayling to Memorial.  No interpreter appeared.[3]  Kramer asked her father to help interpret.  Kramer's father is hearing and knows ASL but is not fluent and does not know medical terminology.  Kramer's father did the best he could to interpret with the staff.  Once in the examination room, Ayling's physician used Kramer's father as an

---

[3] The Complaint does not allege the name of Kramer's father.

interpreter. An ASL interpreter arrived at 9:00 a.m. Memorial staff did not ask the interpreter to go into the procedure room. When Kramer asked why, the interpreter asked for permission to go into the procedure room. The interpreter was allowed to go into the procedure room. The catheterization established that Ayling needed quadruple bypass surgery. Kramer requested assurance from Memorial's staff that an on-site interpreter would be present for the surgery, scheduled for August 6, 2018. Complaint, ¶ 15.

On August 2 and 3, 2018, Kramer called Memorial to repeat her request for an on-site ASL interpreter for Ayling's surgery and hospitalization. On August 3, 2018, Memorial staff assured Kramer that an on-site interpreter would be provided. Complaint, ¶ 16.

On August 6, 2018, at approximately 7:00 a.m., Ayling arrived at Memorial for his bypass surgery. Kramer and Kramer's mother, Amanda, accompanied him.[4] Memorial staff informed Amanda that a request for an interpreter was made but no one responded. Memorial staff said that VRI would be used. Amanda stated that VRI would not be effective because Ayling could not use his arms once IVs were inserted and he was on the table. "Memorial still did nothing to provide an on-site interpreter."

---

[4] The Complaint does not allege the Last name of Kramer's mother.

Complaint, ¶ 17. Amanda attempted to interpret for Ayling. She put on scrubs and went into the operating room. Ayling had numerous questions before going into surgery but did not receive answers because of Amanda's limited ability to use ASL. Amanda insisted on speaking to Memorial's risk manager, but her requests were ignored. Complaint, ¶ 18.

During the time that Amanda was in the operating room, Kramer was alone in the waiting area without an interpreter. The surgery lasted five hours. Once the surgery was over, Amanda had to interpret for Kramer when the surgeon spoke to Kramer. Complaint, ¶ 19.

Memorial provided an on-site ASL interpreter at 7:00 p.m. The interpreter stayed until 9:00 p.m. Amanda stayed all night with Ayling in the intensive care unit to interpret for him. During this time a tube was taken out of his throat and he moved from his bed to a chair. On August 7, 2018, two ASL interpreters were provided. On August 8, an interpreter was provided at 11:00 a.m. From 11:00 a.m. on August 8, 2018 until Ayling's discharge on August 10, 2018, Memorial provided ASL interpreters. The interpreters stayed until 5:00 p.m. each day. No interpreter was provided for the evening and night. Complaint, ¶¶ 20-21.

Based on these facts, Ayling alleges claims for violation of his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. ¶ 12131 (Count

I); The Rehabilitation Act, 29 U.S.C. § 704; and the Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 18116 (Count III).  Kramer alleges claims under the ADA (Count IV), the Rehabilitation Act (Count V), and the ACA (Count VI).  All Counts seek declarative and injunctive relief to enjoin further violations of these acts.  Ayling seeks compensatory damages in Counts II and III, and Kramer seeks compensatory damages in Counts V and VI.  Defendant moves to dismiss all Counts.

ANALYSIS

Dismissal is proper where a complaint fails to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1).  While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds

upon which it rests.  George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).  Dismissal under Rule 12(b)(6) is appropriate when "the factual detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."  Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC, 499 F.3d 663, 667 (7th Cir. 2007).

     Defendants move to dismiss all claims for prospective injunctive relief because Plaintiffs do not allege that they are likely to suffer harm in the future from Defendant's conduct.  All parties seeking relief in federal court must allege "(1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability." Scherr v. Marriott Int'l, 703 F.3d 1069, 1074 (7th Cir. 2013) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).  To state a claim for prospective injunctive relief "a party must allege a 'real and immediate' threat of future violations of their rights." Scherr, 703 F.3d at 1069.  Defendant argues that Plaintiffs do not allege a real and immediate threat of injury from Memorial's actions.  The Court agrees.  Plaintiffs do not allege that they either intend to or must return to Memorial for medical

services.  They do not allege an injury in fact that would entitle them to prospective injunctive relief.

The Plaintiffs argue that Ayling's medical condition as a person who is post-bypass surgery will likely need hospital services.  The Plaintiffs argue that this is sufficient to allege a likelihood of harm without an injunction.  The Court disagrees.  The allegations show he will need continued care from his cardiac specialists and therapists, but the allegations do not establish that he will need hospitalization or that he will return to Memorial after his experience there.  The allegations of future harm are theoretical at best.  See MainStreet Org. of Realtors v. Calumet City, Ill., 505 F.3d 742, 744 (7th Cir. 2007) (alleged harm must be "nontheoretical.").  The Plaintiffs fail to state a claim for injunctive relief.  The Court, however, will give Plaintiffs leave to replead to show that they are entitled to injunctive relief.

Defendant further argues that Plaintiffs fail to allege the requisite intent.  The parties agree that the Rehabilitation Act and the ACA require proof of intentional discrimination to recover damages.  They also agree that the plaintiff under both Acts must prove deliberate indifference.  See Lacy v. Cook County, 897 F.3d 847, 863 (7th Cir. 2018).  Defendant argues that Plaintiffs must allege that a person with authority to provide an on-site

interpreter actually knew that Plaintiffs needed one and deliberately failed to provide one.

The Court disagrees with Defendant. The Seventh Circuit has held that alleging generally that a hospital, with knowledge of a disability, purposely denied needed accommodations to a disabled person states a claim for damages. Reed v. Columbia St. Mary's Hospital, 782 F.3d 331, 337 (7th Cir. 2015); accord Perez v. Fenoglio, 792 F.3d 768, 776-77 (7th Cir. 2015). Plaintiffs have alleged this much. They have alleged that they repeatedly informed Memorial personnel of the need for on-site interpreters and Memorial failed to provide such interpreters. These allegations are sufficient at the pleading stage under Reed and Perez. The opinions cited by Defendant addressed whether Plaintiffs presented sufficient evidence to overcome summary judgment. See Liese v. Indian River County Hospital District, 701 F.3d 334 (11th Cir. 2012); Juech v. Children's Hospital & Health Systems, 353 F.Supp.3d 773 (E.D. Wis. 2018); Sunderland v. Bethesda Hospital, Inc., 686 F.3d Appx. 897 (11th Cir. 2017). The cases do not apply to pleading requirements. Plaintiffs state a claim for damages.[5]

---

[5] The parties do not address whether Kramer must allege additional elements to establish a claim because she was not a patient of Memorial. The Court's review of the cases cited by the parties shows that at least two other circuits disagree on the correct standard for liability to associates of a disabled patient. Compare McCullum v. Orlando Regional Healthcare System, Inc., 768 F.3d 1135, 1143 (11th Cir. 2014); with Loeffler v. Staten Island University Hospital, 582 F.3d 268, 277, 280-83 (2d Cir. 2009). The Seventh Circuit apparently has not addressed the scope of a hospital's obligations to associates of patients who assert claims based on that association. The parties will need to address (at summary

Defendant alternatively moves to strike all reference to the System from the Complaint because Memorial is alleged to have committed all the wrongful acts, and Memorial is a separate corporation and not a d/b/a of the System. Therefore, the System is not a proper party. Plaintiffs have no objection to this aspect of the Motion as long as Memorial remains as a named Defendant. Should Plaintiffs choose to replead, they shall omit the System from the amended pleadings but may name Memorial as a Defendant.

THEREFORE, IT IS ORDERED that Defendant's Motion to Dismiss Plaintiffs Peter Ayling, Jr. and Ali Kramer' Complaint (d/e 8) is ALLOWED in part and DENIED in part. The Plaintiffs' claims for injunctive relief are dismissed with leave to replead. Plaintiffs are given until June 14, 2019, to file their amended complaint. Memorial shall respond to the amended complaint within 14 days of service. The amended complaint shall not name Memorial Health System as a party Defendant. Memorial Health System is dismissed from this case. Memorial Medical Center remains as

---

judgment or some other appropriate juncture) the correct standard for associational liability, assuming Kramer is asserting an associational liability claim. If Kramer is asserting a separate claim of liability because she is deaf independent of her association with Ayling, the parties will need to address why Memorial had an independent obligation to her as a non-patient. At this point, the Court cannot tell whether Kramer is asserting an associational liability claim or a separate independent claim.

a Defendant that may be named in the amended complaint. The Motion is otherwise DENIED.

ENTER: May 22, 2019

                              *s/ Tom Schanzle-Haskins*
                              TOM SCHANZLE-HASKINS
                              UNITED STATES MAGISTRATE JUDGE